THE PEOPLE OF THE STATE OF NEW YORK, Respond-
ents, v. CHARLES D. J. NOELKE and JACOB MARKS,
Appellants.

*Sale of lottery tickets of a corporation of another State — when an indictment there-*
*for, is sufficient — one purchasing, with the intent of informing against the seller*
*is not an accomplice — Code of Criminal Procedure, sec. 399 — Cross-examination*
*of a person who has testified in his own behalf — limits of it — what questions tend*
*to impeach his moral character — Search warrant — admissibility of, in evidence —*
*Code of Criminal Procedure, sec. 792.*

APPEAL by the defendants from a judgment of the General
Sessions of the Peace in and for the city and county of New York,
adjudging them to be guilty of a violation of the lottery law of the
State.

The defendants were charged in the indictment with having sold,
on the 7th of March, 1882, to one Joseph Mattocks, a half ticket
in the Louisiana State Lottery. They were arrested on the twenty-
ninth of March by Mr. Anthony Comstock, who was a witness at
the trial, and who at the time of the arrest searched their premises
under the authority of a search warrant which he exhibited to them.
He found and seized a quantity of lottery material, including a blank
book containing the entries of tickets sold by them.

The court at General Term said : " A great many objections and
exceptions were taken by the defendants' counsel upon the trial.
In the main they were general, no specific ground being stated.
Under the rule which is applicable to such exceptions they may be
regarded as valueless, raising no question in consequence of their
general character. (*Tooley* v. *Bacon*, 70 N. Y., 34; *Levin* v.
*Russell*, 42 id., 251 ; *Daley* v. *Byrne*, 77 id., 182 ; *Schile* v.
*Brokhahus*, 80 id., 614.)

" The counsel for the respondents has taken occasion to cite from
the report of a western case the views of the court on that subject,
which commend themselves to this court, namely : ' The practice of
taking general and obscure exceptions at the moment, in order to
cover the case and enable counsel on subsequent critical examina-
tion to raise points under the exceptions which have never been sug-
gested at all to the mind of the trial judge, is objectionable on
many grounds, and is contrary to the theory upon which points are

allowed to be raised by exceptions.' (*Turner* v. *The People*, 33 Mich., 363, 382; *Adams* v. *State*, 25 Ohio, 584, 587.)

" An examination of this case, however, has led to the conclusion that none of the exceptions taken are of any validity, assuming them to have been presented in proper form to require this court to consider them. The first of these exceptions in the order of their importance, at least, would be those which relate to the form of the indictment. It is declared to be insufficient, for the reason that it simply alleges that the defendant sold a lottery ticket without describing the purpose or object of the lottery, or alleging that it was intended for the purpose of chance, or obtaining money, goods or valuable things, and, further, for the reason that it does not charge any offense in violation of the statute. The answer to this springs from the substance of the indictment itself, and is complete without reference to any of the adjudicated cases. It is alleged therein that the defendants unlawfully sold to one Joseph Mattocks a part of a ticket in a certain lottery not expressly authorized by law, commonly called the Louisiana State Lottery, and, further, that a more particular description of the lottery is to the grand jury unknown and cannot be given. The word 'lottery' has, it was said, no technical legal meaning. It must be construed in a popular sense, with a view of remedying the mischief intended to be prevented. It is defined by Webster, 'a scheme for the distribution of prizes by chance, or the distribution itself;' and he defines 'lot' as that which 'causes, falls or happens; that which in human speech is called chance, fortune, hazard,' and 'to draw lots' is to determine an event by drawing one thing from a number whose marks are concealed from the drawer, and thus determining an event. Worcester defines 'lottery' as 'a hazard in which sums are ventured for a chance of obtaining a greater value.' (Per CHURCH, C. J., in *Wilkinson* v. *Gill*, 74 N. Y., 63.) And in that case the language of FOLGER, J. (to be found in *Hull* v. *Ruggles et al.*, 56 N. Y., 424), it was also said, might be adopted as a result of the accepted definitions, namely : 'Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery.'

" With great deference to the suggestion of Chief Justice

CHURCH, it is nevertheless thought that the word 'lottery' has a technical legal meaning. It means precisely what, used in a popular sense, it described when employed in a statute affecting the subject it embraces. The legislature must be assumed to have used the word 'lottery' in its popular sense. It was the mischief of that species of gambling that was to be prevented. The people were to be protected from the allurements of the doctrine of chances by punishing the persons engaged in selling lottery tickets, and hence the statute. It would seem, therefore, to be a sufficient description of the offense to charge the sale of a lottery ticket, commonly called the Louisiana State Lottery. This is a statement in substance and effect that a chance in a scheme for the distribution of prizes was sold by the defendants, and which scheme was a violation of the law of the State.

"This is the effect of the word 'lottery' as used in the statutes, and in the indictment as well. It is impossible that the defendants, when thus charged, could be misled. They could not fail to understand the offense set out to be the sale of a lottery ticket for the Louisiana State Lottery, and that such lottery was to result in a distribution of prizes to successful ticket-holders.

"This would be a reasonably certain way of describing the crime committed.

"But the indictment went further than this. It set out the ticket, which is as follows:

Half. Class D. 9349. $1.
Will draw at New Orleans.

"THE LOUISIANA LOTTERY COMPANY.

TUESDAY, APRIL 11TH, 1882

*The Monthly Two-Dollar Drawing.*

This ticket entitles the holder thereof to one-half of such prize as may be drawn by its number in the within named drawing, if presented for payment before the expiration of three months from the date of such drawing.          M. A. DAUPHIN,

*President.*"

Incorporated Aug. 17, 1868.

"(Printed across the face :)

One    four    eight    three    six.
1        4        8        3        6

" It will be perceived, upon a reading of this ticket, that it refers to ' the monthly two-dollar drawing,' and declares that it entitles the holder to one-half of such prize as may be drawn, if *presented for payment before the expiration of three months from the date of the drawing*. The word payment conclusively shows that it was intended for the purpose of chance, and obtaining money, goods or valuable things. No other conclusion can be drawn from it by the impartial mind. This proposition is clear, unquestionable and undebatable. It has been held in a series of cases that such an element appearing in the indictment, it is sufficient under the laws of this State.

Thus, for example, in *The People* v. *Warner* (4 Barb., 314), a case which has not been questioned, it was held that an indictment for vending a lottery ticket need not expressly aver that the ticket was of a lottery established or set on foot for the purpose of disposing of real estate, goods, money, or things in action, and that the character and description of the lottery need not form the subject of an express averment. It is sufficient if these appear argumentatively in the indictment, especially after verdict.

" It was contended in that case, as in this, that the indictment should expressly aver the vending of the ticket of a lottery established and set on foot for the purpose of disposing of real estate, goods, money or things in action ; and this contention rested upon the authority of *The People* v. *Payne* (3 Denio, 88).

" In that case (*People* v. *Warner*) the indictment charged the prisoner with ' selling a ticket in the Grand Consolidated Lottery of Delaware and Georgia, numbered 731, \* \* \* which said ticket purported to entitle the holder thereof to one-quarter of such prize as might be drawn to its number, subject to a deduction of fifteen per cent, payable forty days after the drawing,' etc.

" The court said : ' The defendant has been proved to have sold a ticket of this description, namely, a ticket entitling the holder to a quarter of a certain prize, deducting fifteen per cent. It seems to us impossible to maintain that the lottery in this case was not established to dispose of prizes of real estate, personal estate, money or things in action. And it is difficult to entertain a doubt that the ' prize' was to be paid in money. The fortunate holder could not otherwise very conveniently receive his quarter, deducting fifteen per cent.'

" It may be said in this case that it would be impossible to entertain a doubt that the prize was to be paid in money, for the reason that it must be presented for payment. It was further said in that case : ' It is, however, argued that the character and description of the lottery does not form the subject of an express averment.' The court said : ' It is sufficient that it appears argumentatively (especially after verdict) since the enactment of the statute (2 R. S., 728, § 32), which declares that " no indictment shall be deemed invalid, nor shall the trial, judgment or proceedings thereon be affected by reason of any defect or imperfection in matters of form which shall not tend to the prejudice of the defendant." '

"And in the case of *Pickett* v. *The People* (8 Hun, 83), an indictment which charged the defendant with having willfully, unlawfully and knowingly sold what are commonly known and called lottery policies to persons unknown to the jurors, and did then and there vend divers of said lottery policy tickets to persons to the jurors unknown, was held sufficient. Only reasonable certainty is required. The learned justice writing the opinion cited the case of *The People* v. *Taylor* (3 Denio, 91), in which the same doctrine is substantially maintained.

" So far as the case of *The People* v. *Payne* (*supra*) is in conflict with the views herein expressed it has been overruled. But an examination of it shows that the indictment contained nothing from which it appeared, argumentatively or inferentially, that there was to be a distribution of any property, real or personal. In the statement of the case it is said there were four counts for selling a ticket, a quarter of a ticket, a paper purporting to be a quarter of a ticket, and for bartering a paper purporting to be a quarter of a ticket in a certain lottery not authorized by the laws of the State. None of the counts stated for what purpose the lottery was opened or made, and nothing was set out from which it could be inferred. The case, therefore, is very different from the one in hand, in which it clearly appears from the ticket itself that there is to be a prize, and that it is to be paid, if won, on presentation of the ticket. * * *

" It was also objected on the trial that the witness Mattocks, having purchased the ticket, was an accomplice, and that under the provisions of the Code of Criminal Procedure (§ 399) no conviction is justified upon the uncorroborated testimony of an accomplice. The court upon

this subject instructed the jury that they could not convict upon the uncorroborated evidence of the accomplice, and unless he was corroborated by such other evidence as tended to connect the defendants with the crime charged in the indictment. And further, that the corroboration was not sufficient if it merely showed the commission of a crime and the circumstances of it; so that the defendants had the full benefit of this rule in the instructions which the court gave. The difficulty with this proposition lies, however, at the root of it, namely, that Mattocks was not an accomplice. The ticket which he purchased was not bought with a criminal intent. It was purchased for the purpose of proving the fact of its sale by the defendants. The design of his application for a ticket was to show that the defendants were engaged in an unlawful business. There can be no doubt that a purchase made under such circumstances does not make the purchaser an accomplice. There must exist a criminal intent. This is settled both in England and in this country. (*Reg.* v. *Mullins*, 3 Cox Crim. Cases, 526; *People* v. *Farrell*, 30 Cal., 316; *Town of St. Charles* v. *O'Mailey*, 18 Ill., 407; *Campbell* v. *Commonwealth*, 84 Penn. St., 197; *Commonwealth* v. *Downing*, 4 Gray, 29; *State* v. *McKean*, 36 Iowa, 343; *Wright* v. *State*, 7 Texas Ct. App., 574.)

"Some of those cases are precisely in point. Indeed, it has become a necessity for the suppression of crime to resort to this mode of ascertaining whether a prohibited and criminal act may be committed, the victims of a business which it distinguishes failing in the moral courage to complain or to appear as witnesses. Without its use many crimes would increase in number and magnitude, the law be openly violated and the authorities helpless from the absence of such proof as may be required for a conviction. The utmost that can be said of the person employed is, that he is an informer, and leave to the jury the consideration of his evidence as such. Aside from this, however, it appears that Mattocks was corroborated on every point, as to Noelke at least, by his admission at the time of the arrest that he had sold to Mattocks.

"It is also urged on behalf of the defendants to be doubtful whether, in the light of recent decisions of the Court of Appeals, the vending of a Louisiana lottery ticket is an offense. This seems to be a very extraordinary proposition. The Revised Statutes

declare, as said in the case of *Bull* v. *Ruggles* (per FOLGER, J., 56 N. Y., 426), that every lottery, game or device of chance in the nature of a lottery, by whatsoever name it may be called, other than such as have been authorized by law, shall be deemed unlawful. And in. the case of *Grover* v. *Morris* (73 N. Y., 476), Judge ANDREWS said expressly : ' Lotteries authorized by the laws of other States are unlawful here and are illegal within the meaning of the thirty-second section' (referring to the statute). This is conclusively settled by the decisions construing other and cognate sections of the statute. And in the case of *Ormes* v. *Dauchy et al.* (82 N. Y., 443), and upon which the counsel for the appellants relies in this element of the case, although it was held that ' a contract made in this State to advertise a lottery in other States, in the absence of proof that such advertisement is in violation of the laws of those other States, will not be held illegal.' It was expressly declared by the learned judge, writing the opinion of the court, that if the contract was for an advertisement of a lottery scheme in violation of our statute, then the judge erred upon the trial in denying a motion to dismiss the complaint upon the ground that the contract was void as against public policy. * * * All lottery schemes under our statute, whether they originate in this State or any other, are, under the authorities as shown, illegal, and subject those who are connected with them, by the sale of tickets, to arrest, conviction and punishment. (See *Kohn* v. *Koehler*, 21 Hun, 466.)

" It is also urged on behalf of the appellants that the court erred in permitting certain questions to be asked and answered by the defendant Noelke, who was examined on his own behalf. The appeal book does not contain the whole of the evidence given upon the trial. It is presented in a fragmentary form. These questions were all of them, however, germane to the offense and to the defendant's business in connection with lottery schemes, lottery tickets and lottery policies. For example, he was asked : ' Have you not been engaged since prior to 1877 at that place ' (namely, 238 Grand street) ' in the business of lottery tickets and lottery policies ? ' The defendant declined to answer the question, lest it might tend to criminate him. The objection to this series of questions is predicated chiefly of the case of *The People* v. *Crapo* (76 N. Y., 291),

in which the court said, that when the accused was offered as a witness on his own behalf, the prosecution, to entitle them to put to him, upon cross-examination, questions which are irrelevant to the issue and calculated to prejudice him with the jury, must at least be such as to clearly impeach his general moral character and his credibility as a witness, and that it was not legitimate to bolster up a weak case by probabilities based upon other transactions. These questions were clearly designed to impeach his general moral character and his credibility as a witness, because they related to transactions of an illegal character, in which, from the nature of the question, he was supposed to have been engaged. They were perfectly legitimate, therefore, although they were not all answered, as already appears from the refusal of the witness to answer upon the ground that the answers might tend to incriminate him. * * *

"It appears also in the case that the first witness called for the people was Anthony Comstock, who testified 'that he was secretary and chief special agent of the New York Society for the Suppression of Vice;' that he was a 'peace' officer of this county' and 'special deputy sheriff;' that as such, on March 29, 1882, he went to defendant's place of business at 238 Grand street, in the city of New York, in accordance with a search warrant issued upon certain affidavits; which search warrant was offered in evidence, and which search warrant had embodied therein a warrant for the arrest of said defendants in the indictment.

"The admission of the search warrant and the matter pertaining thereto was objected to on the part of the defendants upon the trial upon the ground 'that such document appears to refer to a different proceeding, relating to a different complaint, and having no reference to the subject-matter of this indictment.'

"The court admitted it because the witness said that he went there with the warrant and called the defendants' attention to the cause of arrest.

"It will be perceived that the objection to the admission of the warrant rested upon the proposition that it related to a different complaint, and had no reference to the subject-matter of the indictment. The counsel now arrays against it the assertion that it was issued without the authority of any statute and was an infringement upon the constitutional rights of the defendants and repugnant to

the express provision of section 2 of the Bill of Rights. These views were not presented to the court below, and no objection of this kind was suggested. The counsel also assails it upon the ground that the statute of this State, prior to the adoption of the Code of Criminal Procedure, provided a variety of instances in which the issuance of search warrants should upon proper affidavits be admitted; and he gives the instances and claims that none of the statutes existing were any authority for issuing such an instrument as that set forth in the case, but section 791 of the Code of Criminal Procedure defines, as he concedes, a search warrant to be 'an order in writing in the name of the people, signed by a magistrate directed to a peace officer, commanding him to search for personal property and bring it before the magistrate.' And section 792 provides 'upon what grounds it may be issued,' namely:

"1. 'When the property was stolen or embezzled.'

"2. 'When it was used as the means of committing a felony.'

"3. 'When it is in the possession of any person with the intent to use it as the means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered.'

"The warrant in this case was predicated of proof by affidavit that certain property, to wit, what was commonly known as, or are called, lottery tickets, and certain writing cards, books, advertisements, circulars, notices offering prizes, and stating price of tickets, and when and where same may be had, documents, personal property, tables, devices and apparatus for the purpose of enabling others to sell or vend lottery policies or lottery tickets; and at, within and upon said premises, Charles D. J. Noelke and Jacob Marks did sell, vend, furnish and procure and have in their possession these articles in violation of the laws of the State of New York, with the intent to use the same as the means of committing a public offense, and to promote, maintain and carry on a common public nuisance, and averred that the justice had reason to suspect and believe that the articles and things aforesaid were then sold upon the premises of the said Noelke and Marks, situated at 238 Grand street. It is quite clear from the statement of the contents of the warrant that it justified the examination of the premises for the purposes stated, the allegation being that there was in the

possession of the persons named, with intent to use it as a means of committing a public offense, certain property, viz.: tickets, cards, books, documents, tables, devices, etc. Considering the objections which are now urged for the first time on appeal against the introduction of this paper, it is quite clear that they are of no value; and further, that the original objection that it did not pertain to the offense charged against the defendant has no value, for the reason that an examination of the premises was germane to the subject of the indictment, viz.: the vending of a lottery ticket, which was the charge against the defendants, and which might be established in part by evidence found upon the premises affecting the business of selling lottery tickets there." * * *

*Charles W. Brooke*, for the appellants.

*William C. Beecher*, for the respondents.

Opinion by BRADY, J.; DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed.